FILED
 2015 Sep-29 PM 01:06
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ALABAMA CONCRETE CO., INC. MARY JANE MITCHELL, and MIRIAM MITCHELL ROLAND,** }<br>}<br>}<br>}<br>  Plaintiffs,       }<br>}<br>v.                }<br>}<br>**ARGOS CEMENT, LLC, and L. BRUCE ABLES,** }<br>}<br>}<br>  Defendants.      } | Case No.: 5:14-cv-01940-MHH |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alabama Concrete Co., Inc., Mary Jane Mitchell, and Miriam Mitchell Roland have filed a motion to remand this declaratory judgment and tort action to state court. Defendant Argos Cement, LLC and former defendant L. Bruce Ables removed the action to federal court on the basis of diversity jurisdiction.[1] The plaintiffs argue that complete diversity of citizenship is lacking and that Argos and Mr. Ables did not establish by a preponderance of the evidence that more than $75,000 is in controversy. The Court disagrees and denies the plaintiffs' motion to remand.

---

[1] The plaintiffs voluntarily dismissed their claims against Mr. Ables on September 25, 2015. (Docs. 26, 27).

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This case is a business dispute concerning the right to buy shares of Alabama Concrete. The plaintiffs filed this lawsuit in the Circuit Court of Madison County, Alabama on September 8, 2014. (Doc. 1, p. 23). Assuming the truth of the allegations in the complaint for purposes of this motion to remand, the record demonstrates that Mr. Ables is the former CEO and President of Alabama Concrete. He also was a director of the company. (Doc. 1, p. 23, ¶ 5). Currently, Mr. Ables is the sole trustee of the Woodfin G. Mitchell Testamentary Trust and personal representative of the Last Will and Testament of Woodfin G. Mitchell. (Doc. 1, p. 24, ¶ 5). Mr. Mitchell's daughters, Ms. Mitchell and Ms. Roland, each own at least 37.5% of the stock of Alabama Concrete. (Doc. 1, p. 23, ¶¶ 3-4; Doc. 1, p. 26, ¶ 18).[2]

On June 29, 2012, purportedly acting as president of Alabama Concrete and as a stockholder in his capacity as personal representative of the Estate of W. Gowen Mitchell, Mr. Ables executed a right of first refusal agreement in favor of Argos Cement. (Doc. 1, pp. 24-25, ¶¶ 9, 12; Doc. 1, pp. 40-43). The agreement gives Argos Cement the right of first refusal to purchase outstanding shares of

---

[2] Mr. Mitchell bequeathed to his daughters, Ms. Mitchell and Ms. Roland, equal shares of all of the stock in Alabama Concrete that Mr. Mitchell owned at his death. (Doc. 1, p. 26, ¶ 17). Mr. Ables purports to own 5% of the stock of Alabama Concrete. (Doc. 1, p. 24, ¶ 5). Ms. Mitchell and Ms. Roland have filed a separate state court action in which they seek a declaration that Mr. Ables does not own an interest in Alabama Concrete. In that action, Ms. Mitchell and Ms. Roland ask the state court to remove Mr. Ables as trustee of their father's trust and as personal representative of their father's will. (Doc. 1, p. 24, n.1).

Alabama Concrete on the same terms and conditions as any bona fide offer that Alabama Concrete shareholders receive and find acceptable. (Doc. 1, pp. 24-25, ¶ 10; Doc. 1, p. 40).

Before he signed the agreement with Argos Cement, Mr. Ables did not present the agreement or its terms to the directors or shareholders of Alabama Concrete, and the directors and shareholders of Alabama Concrete did not ratify or agree to the terms of the right of first refusal. (Doc. 1, p. 25, ¶ 14). The plaintiffs allege that Mr. Ables had no authority to bind Alabama Concrete or to burden the Alabama Concrete stock that Ms. Mitchell and Ms. Roland currently own. (Doc. 1, p. 25, ¶¶ 14-15). The plaintiffs contend that "the existence of the unauthorized Right of Refusal has impeded and harmed Alabama Concrete and its stockholders in their efforts to explore opportunities for the sale of Alabama Concrete to a third party." (Doc. 1, p. 27, ¶¶ 24-25). According to the plaintiffs, Argos Cement has used the right of first refusal to demand a lower price per share than Alabama Concrete and its shareholders otherwise could obtain in the absence of the right of first refusal. (Doc. 1, p. 27, ¶ 26).

In their complaint, the plaintiffs request a declaration that Argos's right of first refusal is invalid and unenforceable under Alabama law. The plaintiffs also assert claims for tortious interference with business and/or contractual relations, conspiracy, and breach of fiduciary duty. (Doc. 1, pp. 27-30). As relief for this

alleged tortious conduct, the plaintiffs seek "compensatory and punitive damages in an amount to be determined by the trier of fact." (Doc. 1, p. 31).

Pursuant to 28 U.S.C. § 1446(b), Argos filed a notice of removal on October 10, 2014, within thirty days of service. (Doc. 1). In its notice of removal, Argos asserts that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. (Doc. 1, p. 1). Argos attached to its notice of removal the following evidence in support of diversity of citizenship and the amount in controversy: (1) a declaration from Argos Cement District Sales Manager Judith Funderburke, (Doc. 2, pp. 5-20), and (2) a declaration from Mr. Ables, (Doc. 1, pp. 86-88). Mr. Ables consented to removal. (Doc. 1, p. 102).

The plaintiffs have asked the Court to remand this action to the Circuit Court of Madison County, Alabama. (Doc. 13). In support of their motion, the plaintiffs have submitted the following evidence: (1) a copy of Mr. Mitchell's Last Will and Testament and certified copies of various filings associated with the probate of Mr. Mitchell's estate, (Doc. 13-1); (2) copies of a state court complaint and related documents in which Argos Cement's counsel served as administrator *ad litem* in matters associated with Mr. Mitchell's estate, (Doc. 13-2); (3) a copy of an order extending the appointment of Argos Cement's counsel as administrator *ad litem*, (Doc. 13-3); (4) a copy of a deed and homestead exemption reflecting Mr. Ables's purchase of a home in Huntsville, Alabama on May 3, 2013, (Doc. 13-4); and (5)

copies of correspondence between plaintiffs' counsel and Argos Cement's counsel, (Doc. 13-5; Doc. 13-6).

The Court heard oral argument from the parties on December 10, 2014. During a supplemental hearing on January 12, 2015, Mr. Ables testified under oath regarding his citizenship.[3]

On this record, the Court considers the plaintiffs' motion to remand.

## II.  DISCUSSION

Pursuant to 28 U.S.C. §1441(a), a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  After a defendant removes an action to federal court, the district court must determine "whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

One basis for federal jurisdiction, diversity jurisdiction, exists when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [] citizens of a different States . . . ." 28 U.S.C. § 1332(a)(1); *see also Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d

---

[3] Court reporters recorded both hearings, and transcripts are available upon request.

1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse, and the amount in controversy must exceed $75,000, 28 U.S.C. § 1332(a).") (citations omitted). The plaintiffs' motion to remand concerns both the amount in controversy and the citizenship prongs of § 1332(a). The Court examines them in turn.

### A. Amount in Controversy

"If the plaintiff contests the defendant's [amount in controversy] allegation, § 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014). "Both sides" may "submit proof" concerning the amount in controversy, and the district court must decide, "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554. In doing so, "'the district court must make findings of jurisdictional fact to which the preponderance standard applies.'" *Id.* (quoting H.R. Rep. No. 112–10, p. 16 (2011)).

The preponderance of the evidence standard does not require a removing defendant "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th

Cir. 2010); *see also Dart*, 135 S. Ct. at 554 ("'[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.'") (quoting H.R. Rep. No. 112–10, p. 16 (2011)).  "What counts is the amount in controversy at the time of removal."  *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014).  In conducting its analysis, the district court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" and may use "judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  *Pretka*, 608 F.3d at 754; *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 917 (11th Cir. 2014) (citing *S. Fla. Wellness*, 745 F.3d at 1315); *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) (same).  "[E]stimating the amount in controversy is not nuclear science," and "the undertaking is not to be defeated by unrealistic assumptions that run counter to common sense."  *S. Fla. Wellness*, 745 F.3d at 1317.

"'For amount in controversy purposes, the value of injunctive or declaratory relief is the "value of the object of the litigation" measured from the plaintiff's perspective.'"  *Id.* at 1315-16 (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000), in turn quoting *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 218–20 (11th Cir. 1997) (citations omitted)).  "Stated another way, the value of declaratory relief is

'the monetary value of the benefit that would flow to the plaintiff if the [relief the plaintiff is seeking] were granted.'" *Id.* at 1316 (quoting *Morrison*, 228 F.3d at 1268). "While absolute certainty is neither attainable nor required, the value of declaratory or injunctive relief must be 'sufficiently measurable and certain' to satisfy the amount-in-controversy requirement." *Id.* (quoting *Morrison*, 228 F.3d at 1269); *see also Morrison*, 228 F.3d at 1268-69 (district court must "insure that the benefits resulting from an injunction are not counted where they are so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy by the present suit exceeds $75,000.").

Contrary to the plaintiffs' assertion, the value that would flow to the plaintiffs if the Court declares the right of first refusal invalid is not "too speculative" or "uncertain" to satisfy the amount in controversy prong for diversity jurisdiction. The plaintiffs seek this relief because they claim that the right of first refusal "has and continues to damage [them] in their pursuit of opportunities to sell Alabama Concrete." (Doc. 1, p. 28, ¶ 34). Admittedly, the record contains no evidence of a present offer to purchase Alabama Concrete stock at any price or of the lowest price Alabama Concrete shareholders would accept in exchange for their stock. Still, the Court has little trouble reasonably inferring that the benefit that would flow to the plaintiffs from the declaratory relief sought has a monetary value that exceeds $75,000. It strains credulity to believe that the plaintiffs would

be pursuing this action if they believed that Argos's right of refusal reduced the sales price of Alabama Concrete by $75,000 or less.

This is not mere guesswork. In February 2014, Argos offered to buy Alabama Concrete for $10,500,000 to $11,500,000. (Doc. 2, pp. 9, 12). Believing that Alabama Concrete is worth more, the plaintiffs counter-offered a purchase price of $14,000,000. (Doc. 2, p. 8, ¶ 13; Doc. 2, p. 9). The parties executed a letter of intent under which Argos would purchase Alabama Concrete for $14,000,000, but the parties have not finalized an agreement for Argos's purchase of the shares of Alabama Concrete. (Doc. 2, p. 8, ¶¶ 13-14). The plaintiffs contend that the right of first refusal has: (1) diminished the value of Alabama Concrete stock; and (2) depressed the market for Alabama Concrete stock. (Doc. 1, p. 27, ¶ 26). Given that Alabama Concrete has been valued at more than $10 million dollars, the value of the benefit that would flow to the plaintiffs if the Court declares Argos's right of first refusal invalid exceeds $75,000.

And the plaintiffs are not seeking only declaratory relief. They also are pursuing claims for compensatory and punitive damages under a variety of tort theories. "[T]he value of the damages claims must be aggregated with that of the declaratory judgment claim to determine the total amount in controversy." *Hardy v. Jim Walter Homes, Inc.*, 2007 WL 1889896, at *4 (S.D. Ala. June 28, 2007); *see also Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 585 (2005) ("[I]n

determining whether the amount-in-controversy requirement has been satisfied, a single plaintiff may aggregate two or more claims against a single defendant, even if the claims are unrelated."). Common sense dictates that more than $75,000 is in controversy. *See Roe*, 613 F.3d at 1062.

### B.   Diversity of Citizenship

"Complete diversity requires that no defendant in a diversity action be a citizen of the same state as any plaintiff." *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) (per curiam), *abrogated on other grounds by Hertz Corp. v. Friend,* 559 U.S. 77 (2010); *see also* 28 U.S.C. § 1332(a). "[C]itizenship of the parties is to be determined with reference to the facts as they existed at the time of filing." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) (internal citation omitted).[4]  The burden to show the jurisdictional fact of diversity of citizenship is on the party that removed the action to federal court. *See Williams v. Best Buy Co.,* 269 F.3d 1316, 1319 (11th Cir. 2001).

The plaintiffs are Alabama citizens. (Doc. 1, p. 23). Argos Cement is a Virginia citizen. (Doc. 1, p. 23). Had the plaintiffs sued Mr. Ables only in his

---

[4] Although Mr. Ables no longer is a party to this action, the Court still must determine whether it had jurisdiction over the action when Argos and Mr. Ables removed the lawsuit to federal court. *See Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 358 (S.D. Ga. 1984) ("[D]iversity and jurisdiction are determined on the basis of the facts at the time the suit was filed, and subsequent facts or changes in the domicile of either party do not affect jurisdiction.") (citing *Smith v. Sperling*, 354 U.S. 93, 91 (1957)).

capacity as personal representative of Mr. Mitchell's estate, Mr. Ables would be considered an Alabama citizen, and his presence would destroy diversity of citizenship.[5] Even if Mr. Ables's presence did not destroy diversity, 28 U.S.C. § 1441(b)(2) prohibits a resident defendant from removing a case to federal court.

The Court is not satisfied, though, that the plaintiffs' stated a claim against Mr. Ables in his capacity as the personal representative of Mr. Mitchell's estate. The Court's concern in determining the capacity in which the plaintiffs have sued Mr. Ables "is to ensure [Mr. Ables] receive[s] sufficient notice with respect to the capacity in which he is being sued." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1047 (11th Cir. 2008). "In general, plaintiffs have a duty to 'make plain who they are suing and to do so well before trial.'" *Id.* (quoting *Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995)).

The caption of the plaintiffs' complaint does not designate Mr. Ables as a defendant to this action in his capacity as personal representative of Mr. Mitchell's estate. The caption refers only to "L. Bruce Ables." (Doc. 1, p. 23). The plaintiffs sued Mr. Ables based on conduct in which he engaged in his capacity as president and CEO of Alabama Concrete or in his capacity as the personal representative of Mr. Mitchell's estate. The plaintiffs' initial summons to Mr. Ables identifies him

---

[5] Mr. Mitchell was a citizen of Alabama when he died. Mr. Ables filed a petition for probate of Mr. Mitchell's will, which states that Mr. Mitchell "was at the time of his death an inhabitant of [Madison] County." (Doc. 13-1). "[T]he legal representative of the estate of a decedent shall be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2).

as "L. Bruce Ables" only and does not mention representative capacity. (Doc. 1, p. 45). After the plaintiffs' first attempt to serve Mr. Ables failed, the plaintiffs issued a second summons, again referring to Mr. Ables only as "L. Bruce Ables." (Doc. 1, p. 69).

Ms. Mitchell and Ms. Roland previously sued Mr. Ables in a separate state court action in the Circuit Court of Madison County, Alabama.[6] The caption to that complaint identifies Mr. Ables as a defendant in his personal representative capacity. (Doc. 1, p. 90). The preamble to that complaint states that "[Plaintiffs] . . . file this action against [Ables] individually, and in his capacity . . . as the Personal Representative of the Last Will and Testament of Woodfin G. Mitchell . . . ." (Doc. 1, pp. 90-91). The plaintiffs knew how to sue Mr. Ables in his capacity as personal representative of Mr. Mitchell's estate, but they failed to do so here. Therefore, the Court must determine whether Mr. Ables, in his individual capacity, is a citizen of Alabama or Tennessee.

"'Citizenship is equivalent to domicile for purposes of diversity jurisdiction.'" *Simpson v. Fender*, 445 Fed. Appx. 268, 270 (11th Cir. 2011)

---

[6] That action is styled *The Woodfin G. Mitchell Testamentary Trust, et al. v. L. Bruce Ables, et al.*, 47-CV-2014-901446.00. The record is available on the Alacourt website. The Court takes judicial notice of that record. *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (district court properly took judicial notice of documents related to the plaintiff's previous civil action because the documents "were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b); other internal citations omitted).

(quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). "A person's domicile is the place of his true fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Id.* (internal citation and quotation marks omitted). "[A] change of domicile requires . . . (1) physical presence at the new location with (2) an intention to remain there indefinitely." *Id.* (internal citation and quotation marks omitted). "Every individual has but one domicile and is a citizen of only one state." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1346 (11th Cir. 2011).

"Determination of a party's domicile requires a 'totality of the circumstances' approach weighing a constellation of objective facts, no single one of which is entitled to controlling weight." *Slate v. Shell Oil Co.*, 444 F. Supp. 2d 1210, 1215 (S.D. Ala. 2006) (internal citations omitted).

> Among the objective facts that point to whether an individual has established a domicile include: location of employment; home ownership and ownership of other real property; location of one's household furnishings; registration and title to one's automobiles; driver's licensing; voter registration; payment for utilities; banking; acquiring a telephone number and listing it; receiving mail; and establishing membership in local, professional, civic, religious, or social organizations. In addition to these objective criteria, the domicile inquiry also considers a party's subjective statements of intent, though they are not dispositive.

*Lee v. Airwalk Alabama, LLC*, 2013 WL 4482613, at *3 (N.D. Ala. Aug. 19, 2013) (citing *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1226-27 (M.D. Ala. 2003)).

The plaintiffs maintain that Mr. Ables is domiciled in Alabama for three reasons: (1) Mr. Ables is a long-time resident of Madison County, Alabama; (2) Mr. Ables has practiced law in Huntsville, Alabama for nearly 50 years; and (3) Mr. Ables and his wife recently bought a house in Huntsville, on which the couple claim a homestead tax exemption. (Doc. 13, p. 5). The evidence demonstrates that all of that is true,[7] but the plaintiffs' argument disregards other significant evidence in the record.

Mr. Ables has substantial and more permanent ties to Tennessee. Mr. Ables was a resident of Madison County, Alabama until 2001 when Mr. Ables built a house on land in Tennessee where he was born and raised. (Tr. pp. 6, 37). Since 2001, Mr. Ables has lived in Tennessee even though he continued to work in Alabama. (Doc. 1, p. 87; Tr. p. 37). For seven or eight years, Mr. Ables filed non-

---

[7] Mr. Ables practiced law with the Hunstville, Alabama law firm of Ables Baxter & Parker P.C. for five decades, and Mr. Ables's biography remains on the law firm's website. (Tr. p. 13; http://www.ablesbaxter.com/Attorneys/L-B-Ables.shtml (last visited September 29, 2015)). Mr. Ables is a member of the Alabama Bar Association. (Tr. p. 5). As recently as 2010, Mr. Ables was the president of Alabama Concrete, a company located in Madison County, Alabama. (Tr. p. 8). Mr. Ables received income from Alabama Concrete until June 2014. (Tr. p. 40). In May 2013, Mr. Ables and his wife bought a house on Adams Street in Huntsville, Alabama. (Tr. p. 5). Mr. Ables benefits from a homestead exemption that his wife filed on that property, and the deed lists the Adams Street address as Mr. Ables's mailing address. (Doc. 13-4, pp. 2-3; Tr. p. 4, 9-10, 27). In 2008, Mr. Ables completed a notary application which indicated that he resided in Huntsville, Alabama. (Tr. pp. 19-22; plaintiff's hearing exhibit 1).

resident tax returns for income he earned in Alabama. (Tr. pp. 18, 39). Mr. Ables and his wife bought the Adams Street house in Huntsville so that his wife could have a home closer to her children who live in Alabama. (Tr. pp. 3, 37). Typically, Mr. Ables spends two nights per week at the Huntsville house and three nights per week and all weekends and holidays at his home in Tennessee.[8] (Tr. p. 4). Mr. Ables testified that he intends to live out his days on his property in Tennessee. Mr. Ables is registered to vote in Tennessee, and he receives mail at his house in Tennessee. (Doc. 1, p. 87; Tr. p. 32). Mr. Ables has a Tennessee driver's license, and his cars are registered in Tennessee. (Doc. 1, p. 87; Tr. p. 32).[9] Mr. Ables's cell phone number begins with a Tennessee area code. (Tr. p.

---

[8] The plaintiffs served Mr. Ables with a copy of the summons and complaint by leaving the documents with Mr. Ables's wife at the house in Tennessee. (Doc. 1, p. 80, ¶ 2; *see also* Doc. 1, pp. 69-70). According to Alabama Rule of Civil Procedure 4, the plaintiffs believed the house in Tennessee was Mr. Ables's "dwelling house or usual place of abode." Ala. R. Civ. P. 4. The Court can find no case law indicating that one's "dwelling place" or "usual place of abode" is indicative of domicile. But the Supreme Court of Alabama has recognized that the terms suggest some degree of permanence. *See Allsopp v. Bolding*, 86 So. 3d 952, 961-62 (Ala. 2011).

[9] The plaintiffs cite *Las Vistas Villas v. Peterson*, 778 F. Supp. 1202, 1205 (M.D. Fla. 1991), *aff'd*, 13 F. 3d 409 (11th Cir. 1994), for the proposition that Mr. Ables's Tennessee driver's license and voter registration are not determinative of domicile. The facts of *Las Vistas Villas* are distinguishable from the facts of this case. The defendant in *Las Vitsas Villas* was a law student. *Las Vistas Villas*, 778 F. Supp. at 1205. The court stated:

> Students who reside in a state while pursuing an education can be expected to engage in certain expediencies such as obtaining a local driver's license, opening bank accounts, or having mail delivered to a local address. These acts do not evince an intent to change domicile, where a student has no postgraduation commitment to the state.

36).  Mr. Ables has a Tennessee hunting license, and his two hunting dogs live at his house in Tennessee.  (Tr. p. 32).  Mr. Ables's tractors and other farm equipment are registered in Tennessee.  (Tr. p. 54).  Mr. Ables is a member of the Farmer's Co-Op and Tennessee Farm Bureau.  (Tr. p. 5).  Mr. Ables shops for groceries and attends church in Tennessee.  (Tr. pp. 31, 35).  Mr. Ables's physicians are located in Tennessee.  (Tr. p. 35).  Mr. Ables avers that he has no plans to move to Alabama or any other state.  (Doc. 1, p. 87).

Because Mr. Ables's "subjective expressions of intent accord with the objective facts, the subjective testimony bolsters the objective evidence." *McDonald v. Equitable Life Ins. Co. of Iowa*, 13 F. Supp. 2d 1279, 1281 (M.D. Ala. 1998).  The totality of the evidence demonstrates that Tennessee is the place of Mr. Ables's "true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Simpson*, 445 Fed. Appx. at 270.  The evidence regarding Mr. Ables's contacts with Alabama is not "sufficient to trump [Mr. Ables's] significant and ongoing objective and subjective permanent connections to [Tennessee]."  *McNeal v. Workmaster*, No. 2:09cv758, 2009 WL 4508545, at *3 (M.D. Ala. Nov. 30, 2009).

---

*Id.*  Mr. Ables is not a student.  Mr. Ables built a house in Tennessee 14 years ago, and he has demonstrated his intent to remain indefinitely in Tennessee, despite his ties to Alabama.  Therefore, *Las Vistas Villas* is unpersuasive.

Therefore, the Court finds that Mr. Ables is domiciled in Tennessee and is a Tennessee citizen for purposes of diversity jurisdiction.[10]

## IV.   CONCLUSION

For the reasons discussed above, the Court finds that the parties are completely diverse and that more than $75,000 is in controversy.  Therefore, the Court **DENIES** the plaintiffs' motion to remand.  (Doc. 13).  **On or before October 12, 2015**, the parties shall confer and file a report of the parties' planning meeting pursuant to Federal Rule of Civil Procedure 26(f).

**DONE** and **ORDERED** this September 29, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[10] In their motion to remand, the plaintiffs request an opportunity to conduct jurisdictional discovery if the "Court has any doubt that Ables is a citizen of Alabama." (Doc. 13, p. 6).  The record before the Court is sufficient for the Court to determine that Mr. Ables is domiciled in Tennessee. Therefore, no jurisdictional discovery is necessary.